Ment v Onondaga County Comm. of the Conservative Party of N.Y. State (2025 NY Slip Op 50143(U))

[*1]

Ment v Onondaga County Comm. of the Conservative Party of N.Y. State

2025 NY Slip Op 50143(U)

Decided on February 6, 2025

Supreme Court, Onondaga County

Ramseier, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 6, 2025
Supreme Court, Onondaga County

Bernard Ment, et al, Petitioners/Plaintiffs,

against
Onondaga County Committee of the Conservative Party of New York State, 
 Robert Graham and Nancy Roberts, et al, Respondents/Defendants.

Index No. 010157/2024

Aaron M. Zimmerman, Esq. and Gary J. Lavine, Esq. for all Plaintiffs/Petitioners
Robert F. Julian, Esq. for Onondaga County Committee of the Conservative Party of the State of New York, Robert Graham, Nancy Roberts
Erin Welch Fair, Esq. for Onondaga County Board of Elections

William F. Ramseier, J.

This Election law matter was commenced by Combined Summons and Notice of Petition and Combined Petition and Complaint filed on October 2, 2024, together with an Order to Show Cause seeking a Temporary Restraining Order to permanently enjoin the Reorganizational Meeting of the Onondaga County Committee of the Conservative Party of New York (OCCP). The Court declined to issue the TRO, and the Plaintiffs/Petitioners filed Amended Pleadings and Order to Show Cause on October 11, 2024, set for a return on October 29, 2024. At the request of counsel for all parties, the return was adjourned. On November 4, 2024, the parties stipulated to Amended Pleadings, and the matter was adjourned to December 20, 2024. The matter was further adjourned at the request of Respondents/Defendants to January 10, 2025. On January 3, 2025, Respondents filed a Cross-Motion (NYSCEF Motion No.2) seeking dismissal of the Petition/Complaint, pursuant to CPLR 3211(1), (7) and (8), Human Rights Law 76(a) and CPLR 6301 et. Seq. Petitioners/Plaintiffs opposed the Motion. The Court has considered all of the papers filed on behalf of the parties on the New York State Electronic Filing System under Index No. 010157/2024.
This action involves two factions of the OCCP at odds with one another about the [*2]leadership of the party. Petitioner/Plaintiff Bernard Ment, at the time of commencement of the action, was the Chairperson of the OCCP, whom by his own admission, did not intend to call for the required Organizational Meeting to elect, among others, the leadership of the OCCP.
Respondents/Defendants, namely Executive Vice Chair Robert Graham and Secretary Nancy Roberts, in the absence of Chair Ment, took it upon themselves, with the support of the other members of the OCCP, to ensure that the Organizational Meeting took place.
Executive Committee Meeting of September 17, 2024
Petitioners/Plaintiffs claim that the Executive Committee Meeting of September 17, 2024, is invalid because it was not called for, noticed by, or conducted by Chair Ment, as required by the OCCP By-Laws. Article 4 §2 of the OCCP By-Laws state "The Chairman shall determine the time and date and shall preside at all meetings of the County Committee and of the Executive Committee." Respondents/Defendants note, however, that Article 4 §4 of the OCCP By-Laws specifically requires the Executive Vice Chair to perform the duties of Chairman in case of his absence or incapacity.
What the record makes clear is that Chairman Ment was absent. The Affidavits of Roberts and Graham state that Chair Ment was unresponsive to their communications, and Chair Ment's own Affidavit confirms his absence. There is no requirement in the OCCP By-Laws that there be a specific finding of the absence of the Chairman, thus the action of calling, notifying and presiding at the Executive Committee Meeting of September 17, 2024, by Executive Vice Chair Graham was proper.
It is also noteworthy that the Conservative Party website contains a notice that "Executive Committee meeting held every third Tuesday of each month at 7:00 p.m., Town Hall of Dewitt, 5400 Butternut Drive, East Syracuse. Exception: no meeting in December". September 17, 2024, was the third Tuesday of the month.
In addition to this standing notice, Secretary Roberts noticed the meeting by email of September 13, 2024, as authorized by the By-Laws in Article 4, §4.
Organization Meeting October 6, 2024
Petitioners/Plaintiffs similarly declare the October 6, 2024 Organization Meeting to have been improperly called and conducted, specifically complaining that the proxies were mishandled and that no quorum existed.
The Organization Meeting was set by Executive Vice Chair Graham at the September 17th meeting. Additionally, the meeting was requested by 20 percent of the members, pursuant to By-Laws Article 4, §4. Notice of the meeting was sent by Secretary Roberts in the name of Executive Vice Chair Graham in the continuing absence of Chair Ment.
The minutes of the October 6, 2024 Organization Meeting (NYSCEF #55) detail that signed petitions totaling over 20 percent of the members required the meeting be held. The minutes further detail that the roll was called with 28 members present and 202 proxies presented and validated, thus establishing a quorum.
At the meeting, Christine Varga was elected as County Chairman, Melissa Marzullo was elected Executive Vice Chair, and Nancy Roberts elected as Secretary. Other officers were also duly elected.
Petitioners/Plaintiffs also have alleged that the Certificate of Election that must be filed with the Onondaga County Board of Elections and New York State Board of Elections within 3 [*3]days of the organization meeting, was defective, as it was signed by the newly elected Chairman Varga and Secretary Roberts, and not by Robert Graham, who convened the meeting.
Election Law § 2-112(d) governs and recites "Within 3 days after their organizational meeting, all State and County committees shall file in the Office of the State Board of Elections a certificate stating the names and Post Office addresses of such officers. County Committees and any other committee contained within shall file a copy of such statement with their County Board of Elections."
Nothing in the Election Law requires the certificate to be signed by the outgoing Chair of the meeting, merely that it is filed by the Committee. It is noteworthy that, in addition to the newly elected Chairman, the certificate was signed by Secretary Roberts, who served in that capacity at the beginning of the meeting, and after the election of officers was held. Petitioners/Plaintiffs cite no authority indicating the certificate was not properly signed or filed.
OCCP Party Rules and Election Law
Generally, Courts will not interfere with the internal affairs of a political party. See Bloom v Notaro, 67 NY2d 1048, 1049 [1986]. Indeed, "[it] is firmly established that except where expressly governed by legislation, the internal organization and authority of a political party is governed by the party rules." Bachmann v DeFronzo, 164 AD2d 926, 928 [2d Dept 1990]. This Court notes "that internal issues arising within political parties are best resolved within the party organization itself and judicial involvement should only be undertaken as a last resort." Matter of Bachmann v Coyne, 99 AD2d 742 [2d Dept 1984]. Furthermore, absent conflict with statutory directives, the political parties are given wide latitude to craft their own rules for party governance. see Matter of Kahler v. McNab, 48 NY2d 625, 626 [1979]; Matter of Independence Party State Comm. of the State of New York, 28 AD3d 556, 558 [2d Dept. 2006]; Keukelaar v. Monroe County Bd. of Elections, 307 AD2d 1073, 1074 [4th Dept. 2003]; Matter of Bachmann v. DeFronzo, 164 AD2d at 928].
The Court has cited the some of the more pertinent sections of the OCCP By-Laws above. In addition to those excerpts, the OCCP By-Laws provide as follows: "[t]he County Committee shall meet to organize within twenty (20) days after the primary election at which its members were elected, and will elect a Chairman, an Executive Vice Chairman, a Secretary, and a Treasurer." Further, "the Chairman of the outgoing Committee shall preside until the Chairman of the new Committee is elected." Election Law § 2-112(1)(b) specifically provides, in relevant part, that "[e]very county committee shall meet no earlier than September seventeenth and no later than October sixth following the June primary. Until such organization meeting, the existing county committee shall exercise all legal authority. Upon the conclusion of such organization meeting, the new county committee shall assume all legal authority vested in the previously organized county committee."
Neither the OCCP By-Laws nor Election Law §2-112 contemplate the failure to hold the Organization Meeting. In fact, the meeting is required to be held and attempts to obfuscate and circumvent an organizational meeting are disfavored and improper. see Ellington v Kings County Democratic County Committee, 70 Misc 3d 311 [Sup. Ct. Kings County][where the court annulled the KCDCC Executive Committee's amendment to the by-laws postponing the organizational meeting indefinitely due to Covid-19 and ordered the organizational meeting to proceed].
A complete review of the By-Laws reveals there are no provisions that support Petitioners/Plaintiffs' position that Chairman Ment was required to be formally removed to be considered absent. The same holds true for the challenges of the proxy votes at the Organization Meeting and the certificate filed with the Board of Elections. Further, Petitioners/Plaintiffs do not cite any authoritative case law that would prevent the actions of Respondents/Defendants discussed herein.
The Court adopts Respondents/Defendants' argument that this a classic case of by-law compliance. The record demonstrates that Ment was absent in every context of the word, he was physically absent from the meetings (which alone may be sufficient for Vice Chair Graham to act in his stead), and absent in the modern metaphysical sense, in that he was not even replying to emails, phone calls, or text messages. Executive Vice Chair Graham and Secretary Roberts proceeded with the meetings according to the OCCP By-Laws and properly documented the results in the form of noting the proxies in the meeting minutes and timely filing a certificate of the results with the Board of Elections.
In this Court's view, it is evident that Plaintiffs/Petitioners intended to violate both the OCCP By-Laws and Election Law by failing to hold the Organization Meeting and their attempts to undo the elections are disingenuous. Plaintiffs/Petitioners would rather see the OCCP disintegrate than their fellow party members be afforded the opportunity to meet and organize for the purpose of electing officers and to exercise their democratic rights in the rich pageantry of politics. Indeed, the peaceful transfer of power that is a hallmark of government in this country is instructive under these circumstances.
The Court finds Petitioners/Plaintiffs' remaining contentions to be without merit.
It is therefore,
ORDERED that the relief sought in Plaintiffs/Petitioners Order to Show Cause is DENIED; and it is further
ORDERED that Respondents/Defendants' motion to dismiss is GRANTED and the Petition is DISMISSED with prejudice.
Dated: February 6, 2025
Watertown, New York
WILLIAM F. RAMSEIER
Supreme Court Justice