■ In the Matter of VITO J. SETTINERI et al., Respondents-Appellants, v ROBERT J. DiCARLO et al., Appellants-Respondents, et al., Respondents, and ARTHUR BRAMWELL, Proposed Intervenor-Appellant. (Proceeding No. 1.) In the Matter of PHILLIP A. DONOHUE et al., Respondents, v ROBERT J. DiCARLO et al., Appellants, et al., Respondents, and ARTHUR BRAMWELL, Proposed Intervenor-Appellant. (Proceeding No. 2.) [605 NYS2d 95] —In consolidated proceedings pursuant to Election Law article 16, inter alia,, to invalidate certificates of nomination filed with the Board of Elections of the City of New York

purporting to nominate Robert J. DiCarlo as the candidate of the Republican Party for the office of Senator from the 23rd Senatorial District, Kings and Richmond Counties, Robert J. DiCarlo, Olga Igneri, William D. Powers, the New York Republican State Committee, the Kings County Republican County Committee and the Richmond County Republican County Committee appeal, as limited by their respective briefs, from stated portions of an order and judgment (one paper) of the Supreme Court, Kings County (Garry, J.), dated October 20, 1993, which, among other things, invalidated the nominating certificates; the petitioners in Proceeding No. 1 and the proposed intervenor Arthur Bramwell appeal, as limited by their brief, from so much of the same order and judgment as (1) declined to extend the September 21, 1993 deadline to nominate a new Republican candidate for office of Senator from the 23rd Senatorial District, (2) as denied the application of Bramwell, the newly elected Kings County Republican County Committee Chairman, for leave to intervene in the proceedings, and (3) denied the application of the petitioners in Proceeding No. 1 to substitute new counsel for the Kings County Republican County Committee.

Ordered that the order and judgment is affirmed, without costs or disbursements.

Election Law § 2-106 (4) provides that State and county committee members "shall hold office until the next election at which members of the committee are elected". On September 21, 1993, seven days after the primary at which new members were elected, the outgoing Kings and Richmond County Republican Committee Chairpersons filed two certificates purporting to nominate Robert J. DiCarlo as the candidate of the Republican Party for the office of Senator from the 23rd Senatorial District, pursuant to Election Law §§ 6-116 and 6-158 (6), as well as Rules of the New York Republican State Committee § 16 (B). As the Supreme Court found, these outgoing party officials were *"functus officio"*, and were without power to act upon "substantial matter[s]" such as nominations, although they had the power to carry out purely interim administrative functions *(see, Matter of McDonald v Heffernan,* 300 NY 488; *Matter of Torchin v Cohen,* 286 NY 544; *Matter of Mazur v Kelly,* 170 AD2d 1037; *Matter of Bauman v Fusco,* 21 AD2d 470). The nominating certificates filed by them were therefore properly ruled to be invalid.

New York State's statutory scheme requires that a certifi-

cate of a party nomination for an office to be filled at the time of a general election must be filed *after* the fall primary election, but not later than seven days after that election *(see,* Election Law § 6-158 [6]; *see also,* Election Law §§ 6-116, 2-112; Rules of NY Republican State Comm § 16 [B]), and the failure to file a certificate within the statutory time frame constitutes "a fatal defect" (Election Law § 1-106 [2]). The courts are normally without discretionary power to excuse such a defect, and there are no extraordinary or exigent circumstances present here that might justify judicial intervention *(see, Matter of Hurd v Stout,* 60 NY2d 787; *Matter of Gammerman v Board of Elections,* 57 NY2d 888; *Matter of Carr v New York State Bd. of Elections,* 40 NY2d 556; *Matter of Hicks v Egan,* 166 AD2d 735; *cf., Matter of Berg v Cuomo,* 85 Misc 2d 925). We note that the evidence adduced at trial was unrefuted that, when requested to do so, the Board of Elections expedited its canvasses, and could have certified the newly elected committee members within approximately three days. As the Supreme Court observed, although the seven-day deadline was difficult to meet, it was not impossible. Apparently the rival factions within the party simply refused to act with the requisite dispatch out of fear that the other side would gain control.

We have considered the parties' remaining contentions and find them to be without merit. Miller, Santucci and Joy, JJ., concur.

Balletta, J. P., dissents in part and votes to modify the order and judgment so as to declare valid the two certificates nominating Robert J. DiCarlo filed in the office of the Board of Elections on September 21, 1993, and to affirm the order and judgment as so modified, with a memorandum in which Copertino, J., concurs. A scheduling anomaly resulted from the fact that in recent years the Republican Party of Kings County switched its election of committeepersons from even- to odd-numbered years giving rise to acute time-problems—clearly not anticipated by either the Legislature or the Republican party—when a vacancy in a public office occurred in an odd-numbered year in which county committee members were also being elected. As interpreted by the majority, the outgoing county chairpersons were without power to make the nomination. The new chairpersons did not take office until the deadline had passed. Under those circumstances, the operative framework of deadlines in which the New York State Election Law interacted with the rules of the Republican Party State and County Committees, effectively foreclosed that party from

making a timely nomination of a candidate for a vacant State Senate seat in the 23rd Senatorial District in the upcoming November 2, 1993 election. Because in my view the Legislature did not intend to disenfranchise voters by that framework of time deadlines, I dissent and hold that the designation of Robert J. DiCarlo by the former county committee chairpersons as the Republican candidate for the office of State Senator in the 23rd Senatorial District was valid.

According to the New York Republican State Committee Rules, because the 23rd Senatorial District is composed of territory in both Kings and Richmond Counties, the chairpersons of the Republican Party County Committees from those Counties were entitled to appoint the new nominee by a weighted vote (Rules of NY Republican State Comm § 16 [B]). Although the party rules do not specify, if it be assumed that only the incoming chairpersons had such authority, it is clear that the statutory framework as applied in the instant case would have made such a timely filing effectively impossible. Thus, according to Election Law § 6-158 (6), the nomination for the vacant Senate seat had to be filed not later than seven days after the fall primary election, which was held on September 14, 1993. Thus, the deadline for filing the nomination was September 21, 1993. However, pursuant to the Election Law and the Rules of the Kings County Republican County Committee, the newly elected county committee was to meet within 20 days after its election to elect a new chairperson (Election Law § 2-112; Rules of County Comm of Republican Party in Kings County, art 1, § 2). In addition, the Election Law affords the Board of Elections a period of nine days from the date upon which a primary election is held to canvass the votes and certify the outcome of that primary election (Election Law § 9-200 [1]). Although Election Law § 2-106 (4) provides that members of a party county committee "shall hold office until the next election at which members of the committee are elected," a candidate for election is not considered elected until certified by the Board of Elections (see, Election Law § 9-200 [1]).

The organizational meeting could not be held until the votes were canvassed and the results of the primary election certified, and canvassing can take up to nine days. In this case the committeepersons were certified by the Board of Elections eight days after the primary, one day after the deadline to nominate. Therefore, the newly elected county committee did not have the opportunity to elect a new chairperson prior to

the expiration of the seven-day period for filing a certificate of nomination for the Senate vacancy.

Since it was effectively impossible to canvass and certify the newly elected committee members, convene an organizational meeting, elect a chairperson, and file a proper certificate of nomination, all within seven days of the primary, the outgoing chairperson was obliged to act for the party because the failure to file a nomination by September 21st would have been fatal to its ability to field any candidate for the vacant Senate seat (Election Law § 1-106 [2]). The outgoing chairperson's acts were not inconsistent with the rules of his party, which authorized him to retain such powers as were necessary for the effective operation of the party until a new chairperson could be installed. Accordingly, the certificates of nomination filed on September 21, 1993 must be deemed valid (see, e.g., *Matter of Kahler v McNab,* 48 NY2d 625; *Matter of Gresser v Cohen,* 275 NY 440).

I regard as purely speculative the argument that *if* the outgoing chairperson had petitioned the Board of Elections for an expedited canvass, it is *possible* that a new chairperson could have been elected in time to appoint the nominee under section 16 (B) of the Rules of the New York Republican State Committee by the September 21st deadline. Nor do I believe that the outgoing chairperson had a duty to request such an expedited canvass or engage in any other preparations for the meeting to elect a new chairperson.

I have considered the parties' remaining contentions and find them to be without merit.